**FEDERAL DEPOSIT INSURANCE COMPANY, Plaintiff,**

v.

**Peter L. WYSONG, Defendant.**

**No. G85–482.**

United States District Court, W.D. Michigan, S.D.

March 22, 1990.

Larry E. Powe, Freeman & McKenzie, Mt. Clemens, Mich., for plaintiff.

Robert E. Attmore, Robert J. Riley, Cholette, Perkins & Buchanan, Grand Rapids, Mich., Thomas R. Alward, Cunningham, Davison, Beeby, Rogers, et al., Traverse City, Mich., for defendant.

Ronald A. Deneweth, Schier, Deneweth & Parfitt, P.C., Troy, Mich., for Dencor, Inc.

## OPINION

ENSLEN, District Judge.

This case is currently before the Court on plaintiff FDIC's March 19, 1990 Motion for Immediate Consideration of Order to Pay. This case has a long history before this Court, and a brief background is in order. In August 1987, judgment was ordered in favor of FDIC against defendant Peter Wysong in the amount of $241,210.98. In March 1988, this Court approved a bond of Peninsula Asphalt Corporation ("Peninsula Asphalt") which served to stay FDIC from execution upon defendant Wysong.[1] In January 1989, the Sixth Circuit Court of Appeals affirmed the judgment of this Court. 865 F.2d 1267. Subsequently, Peninsula Asphalt filed for protection under the U.S. Bankruptcy Code. That action is currently pending in the case *In re Peninsula Asphalt Corporation*, No. HT 89–01419 (Bankr.W.D.Mich.) (Chapter 11/date of petition 4–14–89).

Plaintiff FDIC reports that the judgment against defendant Wysong remains unsatisfied. On February 28, 1990, FDIC filed a writ of garnishment issued from this Court upon garnishee defendant Dencor, Inc. ("Dencor").[2] Based upon the information received from the garnishee defendant, plaintiff argues that it is entitled to the $40,000 owed to Wysong under the asset purchase agreement.[3]

According to plaintiff, creditors of Peninsula Asphalt Corporation have filed a motion to determine if certain property is property of the estate under § 541 and for an order escrowing the assets until a full hearing can be held. *See* Plaintiff's Exhibit C. This matter is apparently scheduled for hearing on Monday, March 19, 1990 at 3:00 p.m. In its motion before this Court, plaintiff decries that this hearing was scheduled without proper notice to FDIC.

Plaintiff contends that the motion before the bankruptcy court is "an attempt by the creditors of Peninsula Asphalt to interfere with this Court's exercise of jurisdiction over a matter properly before it." Plaintiff's Motion for Immediate Consideration, at 3 (Facsimile version). Unless this Court takes immediate action, plaintiff FDIC predicts that the bankruptcy court may issue a

---

1. In May 1988, the Court denied FDIC's request to set aside the supercedeas bond or, in the alternative, to require the Peninsula Asphalt Corporation to pledge real estate.

2. It appears that on March 7, 1990, garnishee defendant Dencor filed a disclosure that denied any indebtedness to Wysong, but referenced an offer to purchase certain assets. The asset purchase agreement between Dencor and Wysong provides in relevant part:

 Seller and PETER WYSONG, jointly and severally, to protect and value of the purchased assets, covenant and agree that for a period of five (5) years following the closing date, they, or either of them, will not directly or indirectly, operate, manage, become employed by, or invest in any company or enterprise engaged in the Business [as defined in the agreement] in the counties of Antrim, Charlevoix, Leelanau, Benzie, Manistee, Wexford, Grand Traverse, Kalkaska, and Missaukee. The portion of the purchase price allocated to this covenant not to compete shall be $50,000. Payment shall be allocated as follows: $40,000—Peter Wysong; $10,000—Peninsula Asphalt Corporation.

 *See* Plaintiff's Exhibits A–B.

3. Indeed, in support of this premise, plaintiff states that no "conditioned precedence [sic] to the enforcement of the asset purchase agreement remain." Plaintiff's Motion for Immediate Consideration, at 3 (Facsimile version).

declaration which will have preclusive effect on the parties in the case before me. Given the foregoing, plaintiff FDIC asks me to consider immediately the motion for an order to pay, and issue an order to pay prior to the bankruptcy hearing. In the alternative, plaintiff asks the Court to stay the bankruptcy court proceedings until such time as the Court has considered the motion for an order to pay.

With that background, the Court will now set forth the relevant facts concerning plaintiff's presentation of the motion for immediate consideration of the order to pay. On Friday, March 13, 1990 at approximately 4:45 p.m., counsel for plaintiff FDIC telephoned these chambers, requesting an emergency hearing. Plaintiff's counsel asked the Court to accept the pleadings related to this motion by facsimile copy. Counsel was informed by the Court's case manager that filing pleadings by facsimile copy was improper and not permitted in this Court pursuant to Administrative Order No. 88–007, 5–27–88.[4] Counsel then represented to the Court the vital nature of the motion, at which time the Court consented to plaintiff's sending facsimile copies of its pleadings for the motion for immediate consideration *at that time.*[5] The Court made it clear that plaintiff could not *file* the motion and accompanying documents by facsimile copy, but that the Court would review the merits of the motion using the facsimile copy, and that plaintiff must file the motion in the usual course on Monday morning. After a considerable wait by a member of the Court's staff, plaintiff completed transferring its pleadings over the facsimile machine. Plaintiff's counsel was then informed by phone that there was *no brief* accompanying plaintiff's motion as required by Local Rules 27, 29. Plaintiff's counsel stated that he understood that so long as a party's legal argument was set forth within the motion, no brief was required.

Remarkably, without the Court's knowledge or permission, plaintiff's counsel later transferred a brief through the Clerk of the Court's facsimile equipment *at 7:37 p.m. on Saturday, March 17.*[6] The Court, over the weekend, reviewed the documents it had allowed plaintiff to send on Friday afternoon. The Court, of course, had no idea that the brief in support of the motion had mysteriously appeared in the Clerk of the Court's Office on Saturday evening.

On Monday, March 19, 1990—shortly after 9:00 a.m.—plaintiff actually filed the motion for immediate consideration with the accompanying brief, as is required by court rule. The Court reviewed and re-reviewed the pleadings, and finding no merit, it orally denied plaintiff's motion. This opinion follows.

### DISCUSSION

■ For a number of reasons, plaintiff's request for immediate consideration of its order to pay motion is properly denied. To begin with, plaintiff's counsel did not abide by the circumstances described by the Court for telefax transfer of the pleadings for the Court's consideration. Thus, when

---

4. That local administrative order reads as follows:
 WHEREAS, the judges having been fully advised of the premise;
 AND IT APPEARS that the Administrative Office of the United States Courts, Office of General Counsel, has not issued a formal opinion on facsimile copies;
 AND IT APPEARS that the paper and ink generated by such machines is not original long-life quality, smudges and disappears;
 AND IT APPEARS that a facsimile pleading is not the official court record bearing an original signature;
 AND IT FURTHER APPEARS that in utilizing such a machine, the integrity of the official court record may be compromised;

NOW, THEREFORE, IT IS ORDERED that facsimile pleadings and their copies are not acceptable as filings for pleadings in this court.
IT IS SO ORDERED.

5. Counsel for plaintiff did not begin to transmit the pleadings until approximately 5:10 p.m., despite the Court's understanding that he would begin immediately.

6. It appears that counsel for FDIC on Saturday, March 17 also placed in the mail and attempted to transfer by facsimile copy the brief to other counsel in this case—Mr. Thomas Alward, Mr. Ronald Deneweth, and Mr. Thomas Demling.

the Court went out of its way to become informed about this "emergency" over the weekend, it had no brief and no legal authority supporting immediate consideration of the motion for an order to pay. Of course, the other parties in this action likewise had little, if any, notice of the proceeding requested by plaintiff.

Second, when on Monday morning the Court finally had plaintiff's brief to consider, plaintiff provided no authority for what amounted to an *ex parte* request to hear and immediately decide the motion for an order to pay. According to plaintiff's brief, "[i]t is beyond dispute that this Court has the discretion to hear this matter on a [sic] expedited schedule." For this proposition, plaintiff cites Rule 6(d) of the Federal Rules of Civil Procedure. That rule, however, reads as follows:

> (d) **For Motions—Affidavits.** A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the

hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time.

Fed.R.Civ.P. 6(d). Thus, with cause, a party may file an *ex parte* application for an order of the Court that fixes a time for giving less than five days notice prior to a hearing on a motion. In this case, I see no cause. Much more importantly, the Court cannot reduce the notice period to the equivalent of *no notice*.[7] It is ironic that the unfairness that plaintiff complains of in the bankruptcy proceeding—the lack of notice to FDIC of the hearing on March 19— is exactly what he implores this Court to do to the other parties in this action. This, of course, I will not do.[8]

---

7. Rule 6(d) by its explicit terms does *not* apply to motions which may be held *ex parte*. Indeed the letter and the spirit of this Rule are clear that some notice must properly be given to the other parties in the lawsuit before a hearing on the motion is held. Federal courts generally construe Rule 6(d) liberally when it is desirable to do so and when "there is sufficient time for all of the parties to prepare for the hearing on the motion without prejudice." *See* 4A Wright & Miller, *Federal Practice and Procedure* § 1169, at 509 & n. 7 (and cases cited therein).

8. The Federal Rules contemplate true emergency situations and provide for them in Rule 65. That rule reads in relevant part:

> **Rule 65 Injunctions**
> * * * * * *
> (b) **Temporary Restraining Order; Notice; Hearing; Duration.** A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed

forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if the party does not do so, the court shall dissolve the temporary restraining order. On 2 days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

Fed.R.Civ.P. 65(b). Of course, none of the safeguards required in order to obtain an *ex parte* temporary restraining order have been provided for here.

FDIC also argues that the bankruptcy hearing is an attempt by the unsecured creditors of Peninsula Asphalt to interfere with this Court's jurisdiction over a matter properly before it. While it is true that this Court oversees the garnishment proceedings against defendant Wysong on behalf of FDIC, it is by no means true that the bankruptcy proceeding will affect this Court's *jurisdiction*—the authority and power of the Court to hear the matters before it. This Court will hear and decide disputes of the ancillary garnishment proceedings against defendant Wysong. The bankruptcy court will hear and decide the issue of whether the consulting agreement/covenant not to compete is an illusory and unecessary part of a sale of a division by debtor Peninsula Asphalt designed to improperly benefit Peter Wysong.[9] Although the substance and timing of each of these court's decisions may affect the availability of assets for various creditors, the bankruptcy court's action in no way affects this Court's jurisdiction over the garnishment action.

██ Fourth, plaintiff urges this Court to grant its motion for immediate consideration because FDIC did not receive proper notice of the bankruptcy hearing. It should be clear that the proper forum, if any, to pursue that concern at this time is with the bankruptcy court.

Finally, the alternative relief requested by plaintiff is for this Court "to stay the Bankruptcy [court]'s consideration of the Motion to Determine if Certain Property is Property of the Estate ... until such time as the Court has considered plaintiff's motion for Order to Pay." Motion for Immediate Consideration, at 3 (March 19, 1990). Not surprisingly, plaintiff provides no legal authority which would justify this Court's stay of events in a separate case, *In re Peninsula Asphalt*, which is proceeding in another judicial forum, the bankruptcy court. I find the request extraordinary,

and will most certainly not issue such an order.

While I understand the "race over assets" in the circumstances before me, I cannot fathom how plaintiff's counsel expected to obtain the relief he sought from this Court. The procedural atrocities in this matter are troubling; moreover, the merits of the motion for immediate consideration are, at best, pitifully weak. I am therefore seriously considering the appropriateness of Rule 11 sanctions in this case.[10] I will, of course, consider the motion for the order to pay in the normal, proper course of proceedings in this Court.

### ORDER

In accordance with the opinion entered on this date;

IT IS HEREBY ORDERED that plaintiff FDIC's March 19, 1990 Motion for Immediate Consideration is DENIED.

---

**9.** I also note that the district court may be asked to consider the propriety of the bankruptcy's action on an appeal.

**10.** Rule 11 of the Federal Rules of Civil Procedure allows for sanctions to be imposed upon motion of a party or upon the Court's initiative,

where a motion is signed by an attorney and filed, but is not well-grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.